PATRICK E. HIGGINBOTHAM, Circuit Judge,
joined by KING, Chief Judge, and W. EUGENE DAVIS and CARL E. STEWART, Circuit Judges, dissenting:
In this difficult case I am persuaded to join the view that would affirm the judgment of the district court. It is undisputed that Veeck copied the copyrighted product of SBCCI. That parts of the copied material contain the same expressions as the adopted codes of two Texas cities is no defense unless the use by the cities of the protected expression somehow invalidated SBCCI’s copyright.
The cities could have hired counsel and engineers to draft a code, recouping its expense either from all taxpayers or by charging a fee to users for a copy of its ordinance. A city could also decide, on behalf of the citizens, to license a finished and copyrighted work. Either is a decision by elected representatives.
Against a refrain that “the law” belongs to the people, Veeck asked us to conclude, as a matter of federal common law, that the choice made by the voters of this municipality was not available to it. Its utility as a decisional norm aside, the refrain passes by the fact that it was legislators who chose what they thought was the most practical path, to adopt a technical code developed at the expense of others under a licensing agreement.
Nothing suggests that private entities will control access to “the law.” A contrary vision persists while ignoring the assured access of persons interested in the language of the ordinance. We are not *807 told what impediment a person interested in the ordinance will face that will not be avoided by the doctrines of fair use and implied license or the constitutionally footed right of persons to access the law. Nor does developed case law tell us.
Banks holds that judges, as public employees, cannot have a financial interest in the fruits of their judicial labors. It is a case about authorship, about the acquiring of copyrights by public officials, not a case invalidating the copyrights held by private actors when their work is licensed by lawmakers.
As for the merger doctrine, I am not persuaded that it brings anything more to the table. That doctrine reflects the narrow circumstance where an idea can be expressed only one way and hence protection of its expression gives way. A complex code, even a simple one, can be expressed in a variety of ways. That reality is not ended by choosing one manner of expression to enact and then pronouncing that this normative rule — “the law” — can only be expressed in one way. Of course, you have adopted the protected expression; the reasoning is wholly tautological. It is a restatement of the conclusion that adopting the codes invalidated the copyright, not an independent reason why that is so.
There is a strong argument for that conclusion and it can be simply stated without calling on the illusion of the merger doctrine: the thinness of the protection enjoyed by this specie of copyright is overcome by the stronger public policy of unfettered access to enacted law, a victory expressed in the conclusion that enacting the code into law put the expression in the public domain. Whether that is so is our question and the merger doctrine does not answer it. Rather we are pushed to decide this case by reconciling two competing policies, expressed at a high level of generality, not unlike the large-scale balancing characteristic of judicial findings of violations of substantive due process. Doing so lacks the accretive marks of case-by-case adjudication, vital to the discipline of judges wearing their “common law” hats. Perhaps we will reach that point in the seriatim course of deciding the cases. If and when we do, the choices will come with more sharply defined features than the abstraction we now have.
Significantly the absence of easily-found answers to the large, broadly-stated policy choices calls for caution. As I earlier observed, these small cities were empowered by the work of SBCCI; they gained the benefit of uniformity in regulation with other cities in their codes as well as proven quality — -with the ability to charge a small fee for copies. Any person wishing a copy of the code can obtain it. They can reproduce it for critical commentary or to express their displeasure with its content, even make copies to circulate in a campaign urging that it be rescinded.
It bears emphasis that the Congress is best suited to accommodate its Congres-sionally-created copyright protection with the extraordinary changes in communication trailing the development of the internet. Unless of course it is contended that some Constitutional principle denies Congress the power to authorize copyright protection, for governmental entities wishing to adopt codes such as those before us today. And of course the state legislatures and the municipalities are differently situated in another relevant and vital way — the state enjoys an immunity that the municipalities do not. It is ironical that the federal courts are asked to accept a broadly stated principle that would regulate the states by decreeing that some federal principle denies them the choice of accepting or rejecting a license when absent its waiver of immunity the federal copyright regime is not enforceable *808 against them. This unexplored territory-offers a confusing backdrop and also counsels caution.
Another confusion must be put aside. When Veeck did his work, the code was already available on the internet, albeit subject to the terms of its license. Veeck’s effort was to put the code on the internet free of license. To accept Veeck’s contention would invalidate the copyright on every model code except those in inventory that had never been adopted by any governmental body. Publishing adopted model codes as a set with the list of governmental bodies adopting them could be accomplished without honoring the copyright because there would be no copyright.
In sum, the suggestion that SBCCI’s position asks this Court to extend the reach of the copyright law is exactly backwards. The copyrights at issue here were concededly valid before the cities adopted them as codes. The proper question is whether we should invalidate an otherwise valid copyright as well as the solemn contract between the governmental body and SBCCI. That aggressive contention must find stronger legs than the rhetoric it comes clothed in here. The contention comes with no constitutional or statutory text, except its reliance upon the merger doctrine, and that is wordplay. This is federal common law adjudication. Its hallmark must be case-by-case accretion and measured decision making, even if the case-by-case explanation of the permissible restraint upon the copying of an enacted code leads to the conclusion that Veeck urges today — and I am not yet willing to embrace — that invalidity of the copyright is the inevitable consequence of code adoption. Rather, I conclude that Veeck violated the explicit terms of the license he agreed to when he copied model codes for the internet and posted them. I decide no more.